May it please the court. My name is Dan Kelly. I'm here with my colleague Brandon Wheeler and we represent the defendant appellant Chris Johnson in this matter. It's a relatively straightforward case that relates to the appointment of a receiver. It's been I think thoroughly briefed. I'm not going to delve too deeply into the facts but I do want to touch on a Aviation Supply is the primary if not exclusive case upon which this decision rests. And that case has been used and cited well over a couple of decades by multiple I can get this out because I don't agree with that. I think the key factor in this case is the charging order statute in which the Minnesota legislature has declared more or less that LLC membership is a situation where receivership is very apt to be appropriate. And that order was entered and is unappealed. That receivership was granted and is unappealed. And so the only thing on appeal is whether the district court abused its discretion in finding in concluding that more than a charging order receivership was appropriate. Now to me that means we're aviation supply does not does not does not paint the landscape. The legislature has already said this is this is a receiver. This is apt to be a receivership appropriate situation. Why doesn't that necessarily color the application of general principles from aviation supply. Well if I if I'm understanding your question your honor I think that what the legislature has done is said on a very limited basis that if you have a charging order you can have a receiver and that receiver is very limited. What occurred here and we're not challenging the appointment of that receiver for purposes of the LLC. It's just one receiver. Financial interest. You are you are claiming there was an abusive discretion in the in the powers given to a receiver which was appropriately appointed under the my reason of general receivership principles. Now to just say that well under aviation supply this situation doesn't doesn't warrant a receiver. I say no. That argument I that doesn't get the first base with me because this receiver is appropriate. I'm not arguing that the receiver for purposes of the LLC interest is not appropriate. In the district court's order it's very distinctive. The district court relies on Minnesota statute to appoint a limited receiver with very limited authority. And let me be clear about what the limitations of that authority are. The authority are for the distributions only not the interest the distributions from the LLC number one and number two the only inquiries that receiver can can conduct are those inquiries with which the debtor as a member of that LLC. I just said that could only conduct. That's not that's not getting to the problem. Where is the abusive discretion in giving the receiver more here. The abuse of discretion is that the receiver was appointed to oversee non LLC property and that your honor is that a tool for you to understand that. But you see I'm I I think your premise as to the governing legal principle is all wrong because this statute takes us one step beyond the general situation in which you have to start with whether the situation even warrants an extraordinary remedy. It does here. And the question is how extraordinary should the remedy be. And that's an abuse of discretion review. Your honor the statute does not provide for in the LLC context to appoint a receiver because it's an extraordinary because of an extraordinary my point so move on. Well I will move on but I would only point out saying that the statute sets the table for the receivership powers. I'm not saying that the statute authorized all the powers that the district court gave this receiver right. And when the district court decided what powers to give this receiver particularly over the non LLC property the district court relied on aviation supply. Well certainly. But that doesn't mean that doesn't mean that that you go back to square one under aviation supply with well is this an extraordinary situation. It is. Well I don't think the court determined under the LLC statute that it was an extraordinary situation. I think the only time the court determined that it was an extraordinary. It's implicit. The statute the statute basically says if you've got if this is a situation that warrants a charging order it's extraordinary and a receiver may be needed. I don't think the language of the statute indicates that and I don't think that that's the import of the statute. The import of the statute is to provide a very limited receiver in a very limited circumstance. And if you're going to expand beyond the if you're going to expand the powers over non LLC property for that receiver you have to meet the burden which is set forth in aviation. So you're to ask a variation. I don't think it's precisely the question Judge Logan was asking but you really are saying that you have to bifurcate this that that for the LLC you rely on the Minnesota standard the state law standard because that's that's the statute under which the receiver was appointed. But then when you expand the duties to things beyond the LLC the transferable interest in the LLC then you got to look at it at exceptional circumstances. That's your position. You got to look at the exceptional circumstances. Correct Your Honor and that's not only my position that's the position of the district court in the district court order district court order which is relatively short has discussion a under the statute discussion be receiver over non LLC property and in the discussion under the non LLC property goes right to aviation. Well and then I think that then I think that Judge Logan is is is really saying does that make sense. And the reason why it might make sense is if you already have a receiver who's going to be looking in the transfer into the transferable interest the LLC why not have the receiver also protect other assets too so that maybe the exceptional circumstances standard should maybe be lower different whatever if you already have a receiver appointed. Well it's kind of a public policy argument but I'll give you an example. So what that would what would occur in that instance is that if you had a debtor that was worth 50 million dollars and but didn't have any LLC interest the standard for that person having a receiver appointed would be different than somebody that had 50 million dollars of assets and did have an LLC interest. It would it would make from a public policy standpoint no sense. Number one that's number one number two that's not what the legislature intended and and the legislature relied on a uniform partnership act. This is not we don't have any legislative history in Minnesota. I'm sorry what's the legislative history you're referring to I'm referring to the plain language of the statute your honor that provides for legislative history. You're correct your honor I'm looking at the plain language of the statute which provides for a very limited receiver for very limited powers and so how could it be that if you had one LLC interest that suddenly you were more subject to having a receiver appointed than if you didn't have an LLC interest. In addition to that if you lower the standard that far and allow somebody if they have an LLC interest to get a receiver and then expand it as Judge Strauss you've indicated. What essentially occurs is that in every collection action regardless of what's gone on in that collection action you would be opening the door for a receiver the cost and expense of the receiver and the fact that this court in all courts have have recognized that that's an extraordinary remedy and so in virtually any collection action where somebody possessed some LLC interest you would automatically be taking that next step to that extraordinary remedy. How can you make it make a non categorical order all of a sudden categorical for purposes of review on appeal. It's like saying it's like the fight in the briefs over whether whether the district how much how much authority that the the receiver was given to either recommend or actually implement liquid liquidations. We you you review these things in a in a fact intensive way based on on the situation and I thought that then the district court gave reasons why in this particular situation with this judgment debtor and this array of apparent assets there was there was a a a an interrelated inquiry that was needed. Your Honor doesn't mean that every collection action in the in the future with a judgment debtor who happens to be a LLC member for point five percent of his assets is going to have a receiver appointed. The facts Your Honor that were before this district district court and the facts that are in the record and I would encourage strongly that the court delve into the record because much of what was said in the brief much of what will probably be said here today is not in the record but the facts that were in the record is there was a judgment. There were some garnishments that were served. There was a red where sheriff went to the Mister Johnson's house and said you have one point five million dollars. He said no. And there was a delay in responding to discovery. That is not anything that is extraordinary that is not anything that presents an extreme situation and that all of which is very common in a collection. You don't think though the fact that you have a a person who has a large interest in an LLC and the and and the bank is only able to recover three thousand dollars despite what what appears to be significant assets that that could present an extra assuming extraordinary circumstances apply that that doesn't present an extraordinary circumstance and if it doesn't why not. Because they hadn't engaged in any discovery they hadn't engaged in any deposition they hadn't delved into how he was receiving his his money or in that case not receiving the money and that LLC interest that financial interest was subject then to a charging order to which incidentally we agreed and a receiver for that charging order. So no the the that that is not an extraordinary circumstance in fact it's a very ordinary circumstance and it can't be that someone doesn't take a single deposition and then is able to go to the court and say not not that so far legal remedies haven't worked because that's not the standard. The standard is legal remedies are not adequate and I think if you compare the starkly different facts from aviation supply in that case the legal remedies were no longer adequate when it came to a deposition the debtor took the Fifth Amendment so discovery was off the table. The debtor engaged in transfer of assets the the debtor when the debtor gave disclosures gave false disclosures the facts are simply not comparable in aviation supply to this case nor to any of the many district court cases that have been decided since and there's nothing done by the Minnesota legislature under the LLC statute that would otherwise change the burden the high burden to have extraordinary relief granted under aviation supply. Did any of those in district court cases you cite in the reply brief involve LLC orders or charging orders? I don't know the answer to that. Probably not. I mean you've read them all I haven't. I don't recall whether or not when any of those debtors had LLC's but I can say this. I said charging orders. Charging orders in LLC's correct? Yes. A charging order under the LLC statute. One debtor should not and could not be subject to an easier standard to have a receiver appointed merely because one of the investments that debtor held was an LLC. All I asked was whether your cases that I haven't read involved this situation. I don't know whether a charging order in an LLC was issued. That was the answer. I'll reserve. One question on the LLC point again sort of carving that off. Did the receiver in your view have the power to go in and look at whether or not what looked like loan payments were really distributions or would that be in the other pot that you're talking about outside the LLC statute? That receiver could make that inquiry because the debtor as a member in the LLC could make that inquiry. In essence, the receiver, the limited receiver steps into the shoes and has the ability to look at what the debtor can look at and again that's statutory. The books and records of the company. Thank you. I'll reserve my last minute. Thank you. Thank you. May it please the court. Ira Glauber, counsel for Apelli Morgan Stanley. Your Honor is absolutely correct. The sole issue here is whether or not the district court complied with the Minnesota charging order statute when it appointed a receiver. The district court scrupulously complied with the statute. Well, the second argument is it was abuse of discretion to give the receiver too much power. Ah, so let's talk about what the powers were. The district court never once said take over the corporation. The district court complied with the statute which said all that you're allowed to do is to get the distributions which is the transferable interest. And then the district court also said and do an accounting. Get to the bottom of this. Come back to me after you do an accounting. I want to find out what's going on here. And in the interim, I'm not even going to order foreclosure. So the district court had the power to order foreclosure a year ago but did not do that. So what is the power that they say that the district court did wrong, that the receiver did wrong? All that he did was order an accounting. And the statute says that you can ask for information which is all that the district court told the receiver to do. It says get me the information. And the receiver did absolutely nothing other than that. Well, the district court gave specific instructions but the district court went a little further and said that essentially the receiver had all the powers that were available under Minnesota law. And I don't know what – that seems pretty extensive. That's very true. But when the receiver went there, the receiver could do absolutely nothing because Mr. Johnson had conveyed millions of dollars to his wife, to his sister, to his brother-in-law, to fictitious companies that he set up owned by the wife and by the sister. And so the receiver, if you've read the report, the report of the receiver, the receiver did absolutely nothing. He couldn't collect anything. He couldn't collect anything. So let's break it down between LLC assets and non-LLC assets. It's agreed that in terms of the LLC, the receiver did exactly what the statute entitled him to do, which is simply to investigate what the story was with the distributions. Judge Strasser hit it on the head. The receiver's report said what happened here is that there were distributions disguised as loans. That's fraud. What the court said to do, the court said, tell me if it's a subterfuge. Well, subterfuge is fraud. And the receiver did an exhaustive examination of every single financial transaction engaged in by this debtor and determined, yes, this debtor in fact – Don't go outside the record. No, it's in the record. We haven't granted the motion to expand the record. Okay. Ah, okay. What is in the record, and let me point out the falsity of the judgment debtor that is in fact in the record, and when opposing counsel said there was no falsity alleged that's on the record, that is not true. And I can tell you exactly where it is in the record. I'm concerned. I want you to finish that, but I just want to tell you what my concern is. It's sort of the argument that opposing counsel is making, which is that you might be able to look at the LLC, but then when you start looking at other transactions, that's something that's more of an aviation supply issue, not an LLC statute. So please finish what you're saying, but I still want an answer to sort of that question. Sure, because it ties in with that. It does. First of all, the aviation supply factors, there are six different factors, and the court was free to choose from which of the six that it decided to choose from. And one of the key factors is the unavailability of legal remedies or the inappropriate or whatever it says. The legal remedies don't work, and that's what happened here is that an execution was given to the sheriff. The sheriff went out, spoke to Mr. Johnson, and Mr. Johnson, he didn't say I don't have $1.5 million. He says I don't have any money. Mr. Johnson doesn't have any money with the millions of dollars that he's in the record in terms of what his tax return showed. And so that was falsity number one, that he lied to the state of Minnesota sheriff when he said he didn't have any money. So there was an inability. The execution came back unsatisfied. Bank garnishments came back unsatisfied. We got $3,000 from a bank garnishment. Now, here's the key third garnishment, but it's the falsity. A garnishment was served on Mr. Johnson's company, Providence Development, LLC, and they answered it. Providence Development answered the garnishment in October of 2017. And he said or his company said zero money was owed by Providence Development to Mr. Johnson. That was a false statement, and that is in the record because what was before the district court is that about $488,000 was owed by Providence Development Corporation to Mr. Johnson. So even if exceptional circumstances are required, these falsities could be taken into account by the district court. We met the exceptional circumstances because the Eighth Circuit decision in aviation supply said that you do not need proof of fraud, but you need some probability of fraud. There are evidentiary facts. There were evidentiary facts in the record before the district court for the judge to conclude that there might be fraud, that there was a probability of fraud. That's why the judge in his decision said to the receiver, tell me, are there subterfuges going on here? The judge didn't make that up from nowhere because right in the record, it's page A91 and A128. They were the written garnishment statements of Providence Development, October 2017. It said, how much money do you owe to the companies, the LLC owed to Mr. Johnson? Zero was the answer. And yet evidence that was produced in discovery, when he said we didn't take discovery, his tax return showed at that point in time $488,000 was owed then. And he actually paid $94,000. It was the biggest payment that we got. So obviously money was owed. So there was a false statement. There were two false statements because there were two false garnishment responses by Providence Development. And so we've met the standard of aviation supply. Let me address the receiver's report. We made a motion to expand the record. This court has the discretion to do so in the interest of justice. Why are we doing this? Why am I asking for this? The past is the past. The receiver already did his report. It's an exhaustive report. He determined whatever it is that he determined. But the record should be supplemented because for the future, what's going on here is now what does the district court do? There was a receiver report which answered Judge Magnuson's question, which was, was there subterfuge? The receiver answered it. Okay. So now what do we do? Okay. We have an LLC statute which says that a receiver can, you can ask for information. I don't understand what for the future means. If we affirm or reverse, then the future unfolds and the report exists. Right. To be done, to be made such use of as the parties in the district court determined. Well, you're right, Your Honor. I made a motion to hold Mr. Johnson in contempt because there was a clear violation of the charging order. And Judge Magnuson said, no, it's up on appeal. I'm not doing nothing. As he should. Okay. Well, that's fine. So what I mean is in the future, we're going to pick up the pieces right where they left off. But let me address this breach of the charging order. No, I just don't understand why the motion to supplement. I mean, if the district court's decision was inadequately supported on the record at the time, then presumably we'll vacate the order and you'll go back and armed with the trustee's report saying, now give us the powers that the 8th Circuit didn't think were justified before. Right. So why does the, I mean, I think you want the motion to supplement to be granted so there's a better chance that we'll affirm. But that's an improper. I'm making, I think, a good inference, but having gone there. Your Honor, let me say this. There is more than enough in the record to affirm without looking at the receiver report. I've just now indicated that the two garnishment statements on page A91 and A128 were flatly false. That's fraud. That answered the judge's question about subterfuge. Talk to me about discovery, though, because they say, look, Morgan Stanley is using this as an excuse so they don't have to do the work. They get a receiver appointed and they don't have to do any more discovery or spend money. That's not what happened. First of all, there was discovery. It was in December of 2017. The standard discovery request was served both by certified mail and regular mail to Mr. Johnson. He totally ignored them. And it wasn't until we made the motion for a receiver in April, that's four months later, that finally he started producing some documents. But the documents that we got did not answer the entire picture. And we looked at the statute and it says when there's an LLC involved, we knew that he was getting money out of these companies, but we didn't know how. So we made the determination to stop the discovery then and then to move immediately for a charging order and simultaneously for the appointment of a receiver. Why not move to compel first? Why not move to compel the discovery before going for the receiver? Moving to compel, first of all, is that the statute gave us the right to seek a receiver. The statute doesn't say that you have to go for discovery. We looked at the statute and it said where you seek a charging order, you go for a receiver. And we'd already taken enough discovery to show us that there was enough here because we had his tax return. We did serve a subpoena. We had tax returns. We just did not have a debt position. But believe me, this had nothing to do with saving money or anything like that. The most effective way of getting the LLC distributions was through the appointment of a receiver because we believe that we put in the record evidence of fraud, okay, subterfuge fraud, wrongdoing, call it whatever you will. And when you have a recalcitrant debtor like that who has millions of dollars and that was in the record and he gives you scattering pieces of paper here and there, he didn't even tell us what his 2017 earnings were. That's the most basic information that you need when you collect a judgment. Look, we've all had experience collecting judgments in this court. And there are some people who just don't have the money. And when they don't have the money, you can't get water out of a stone. But that was not the situation here. This was someone who was living high on the hog. We knew that there was hundreds of thousands of dollars coming in and out. We had his tax returns. So it simply is not true to say that we didn't take discovery. We did take discovery. I think, again, on the LLC, there's no doubt that we had the right to appoint a receiver. And there's no doubt that the powers, the powers that were given to the receiver were to conduct an accounting. And the judge didn't make that up. There's a statement in, I believe it's in the comments to the revised Uniform Limited Partnership Act, which is very similar to this, which said that the main benefit of a receiver is to get information. That's what the comment, and that's cited in our brief. And I think one of the other cases said that. I think one of the other district court cases say the benefit of a receiver in this circumstance is to get information. That's all that Judge Magnuson did in terms of the LLC. He denied without prejudice foreclosure. And he says, just get to the bottom of this. And that's exactly what the receiver did. So in terms of exceeding authority, the receiver did nothing, did not take over the corporation. If the receiver took over the LLC, or the district court told him to do that, that would be in excess of his powers. But we all know that the receiver is limited to getting the transferable interest, which are the distributions. And so that's on the LLC side. Then on the non-LLC side, we met the standard of aviation supply. Ryden Miller says that it's disjunctive. It's either that your usual legal remedies are ineffective, or there's fraud. We had both. We had both, with the garnishments that came back from the bank, and then with the falsehoods in the garnishment response of Providence Development. So the standard clearly was met, and the decision should simply be affirmed. Thank you. Thank you, counsel. Mr. Kelley, do we have some time? Thank you, Your Honor. There's an issue with respect to supplementing the record that is also not, I think, squarely addressed by any of the briefs. And if you turn to page 24 of their brief, you'll see the issue. What Morgan Stanley has attempted to do is latch on the district court's order denying the stay and make that findings of fact that this court can consider with respect to the order that is on appeal. I need to be very clear about this. There is nothing within that order on the motion to stay that falls within the jurisdiction of this court. That order was not appealed. It's not part of the notice of appeal. And, in fact, that order was issued after we filed our appeal. And each time, I'll read it. The lower court supported the finding as follows, and there's a long block quote, but the block quote comes from the order denying the stay. So that is another way in which the record is attempted to be supplanted. To an earlier counsel, and I'll very briefly conclude. Very brief. To an earlier attorney, Your Honor, you said, we read what was wrote. We read what he wrote and compare it to the record. If you stay within the confines of the findings that Judge Magnuson made here and compare it to the record, it does not meet the standard of aviation supply. Thank you. Thank you, counsel. The case has been well briefed and argued. We'll take it under advisement. Please call the last case.